In the

# United States Court of Appeals

## For the Seventh Circuit

No. 10-3935

ANCHORBANK, FSB, et al.,

*Plaintiffs-Appellants,*

*v.*

CLARK A. HOFER,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 3:09-CV-00610—**Stephen L. Crocker,** *Magistrate Judge*.

ARGUED MAY 5, 2011—DECIDED AUGUST 18, 2011

Before MANION, WOOD, and WILLIAMS, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* AnchorBank and Plumb Trust Company, the Trustee for an AnchorBank investment fund, filed a civil suit against Clark A. Hofer, an employee of AnchorBank, alleging that Hofer engaged in a collusive trading scheme in violation of the Securities Exchange Act of 1934. Hofer moved to dismiss, asserting that the complaint was inadequately pleaded, and the court granted the motion to dismiss with prejudice.

AnchorBank and Plumb appealed, and we find that the plaintiffs' complaint sufficiently pleads a violation pursuant to Federal Rules of Civil Procedure 8(a) and 9(b), the Securities Exchange Act of 1934, and the Private Securities Litigation Reform Act. The complaint adequately stated with particularity the circumstances constituting the securities fraud, and the economic loss impact on the plaintiffs as a result of the fraud. Therefore, we reverse the decision of the district court and remand the case for further proceedings consistent with this opinion.

## I. BACKGROUND

AnchorBank FSB and AnchorBank Unitized Fund (the Fund), whom we will refer to collectively as AnchorBank, filed a complaint against Clark Hofer on October 5, 2009. The complaint alleged that Hofer and two co-conspirators, all of whom were employees of AnchorBank, violated sections 9(a) and 10(b) of the Securities Exchange Act of 1934 when they engaged in a collusive trading scheme by coordinating their purchase and sale of units in the Fund, which was an investment option in their individual 401(k) accounts. The complaint also alleged violations of Wisconsin's securities law and brought common law claims for breach of fiduciary duty and unjust enrichment. The two co-conspirators were not named in the suit against Hofer because they settled with AnchorBank before it initiated suit. Hofer moved to dismiss the complaint against him under Federal Rules of Civil Procedure 9(b) and 12(b)(6). Seeking to

remedy the deficiencies Hofer cited in his motion to dismiss, AnchorBank filed an amended complaint. Hofer then moved to dismiss the first amended complaint. The district court granted the motion, dismissing the first amended complaint without prejudice.

AnchorBank filed a second amended complaint, adding Plumb Trust Company, the Trustee for the Fund, as an additional plaintiff. AnchorBank and Plumb also added, among other things, a paragraph describing examples of trading activity by Fund participants "M" and "H", and stated that both M and H sold their Fund shares "at a lower price as a direct result of the Collusive Trading Activity by Hofer and the other co-conspirators." Second Am. Compl. at ¶ 66. Hofer moved to dismiss the second amended complaint. The district court granted the motion, and dismissed the plaintiffs' complaint with prejudice. It found that AnchorBank and Plumb had satisfied all of the pleading requirements except for loss causation. It also found that it was improper for the plaintiffs to include the references to M and H because it amounted to an attempt to pursue a claim on behalf of other individuals. The court also declined to exercise supplemental jurisdiction over the plaintiffs' state law claims. AnchorBank and Plumb appealed. At issue before us is whether the court erred in granting Hofer's motion to dismiss AnchorBank and Plumb's second amended complaint.[1]

---

[1] Hofer moved for attorneys' fees after the court granted his motion to dismiss the second amended complaint against him.

(continued...)

## II. ANALYSIS

### Motion to Dismiss Should Not Have Been Granted

We review de novo a district court's decision to dismiss a complaint for failure to state a claim on which relief can be granted. *Stayart v. Yahoo! Inc.*, 623 F.3d 436, 438 (7th Cir. 2010). In evaluating the sufficiency of the complaint, we view it in the light most favorable to the plaintiff, taking as true all well-pleaded factual allegations and making all possible inferences from the allegations in the plaintiff's favor. *Wilson v. Price*, 624 F.3d 389, 391 (7th Cir. 2010). Our task in reviewing the sufficiency of a complaint is "necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Caremark, Inc. v. Coram Healthcare Corp.*, 113 F.3d 645, 648 (7th Cir. 1997) (citation omitted).

"Although the bar to survive a motion to dismiss is not high, the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 463 (7th Cir. 2010) (internal citations and quotations omitted). A "plaintiff must do better than putting a few

---

[1] (...continued)

This fee request is still pending in the district court, but is a collateral issue that does not divest us of appellate jurisdiction over the district court's final order dismissing the complaint. *Budinich v. Becton Dickinson and Co.*, 486 U.S. 196, 199-200 (1988); *WMS Gaming Inc. v. WPC Prods. Ltd.*, 542 F.3d 601, 605 (7th Cir. 2008).

words on paper that, in the hands of an imaginative reader, *might* suggest that something has happened to her that *might* be redressed by the law." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 403 (7th Cir. 2010) (emphasis in original). And to survive a motion to dismiss in a complex case, a complaint must sufficiently plead allegations to allow a judgment that the claim has the possible merit that justifies the time and expense required in litigating the case. *Stark Trading v. Falconbridge Ltd.*, 552 F.3d 568, 574 (7th Cir. 2009).

In their second amended complaint, AnchorBank and Plumb alleged that Hofer engaged in a collusive trading scheme in violation of sections 9(a) and 10(b) of the Securities Exchange Act of 1934. To satisfy the pleading requirements in their case, AnchorBank and Plumb had to meet the general pleading requirements of Federal Rules of Civil Procedure 8(a) and 9(b). *See Smith v. Medical Benefit Adm'rs Group, Inc.*, 639 F.3d 277, 281 (7th Cir. 2011); *Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP*, 475 F.3d 824, 833 (7th Cir. 2007). They also needed to satisfy the pleading requirements of sections 9(a) and 10(b) of the Securities Exchange Act of 1934. *Sullivan & Long, Inc. v. Scattered Corp.*, 47 F.3d 857, 864-65 (7th Cir. 1995). And they had to satisfy the requirements of the Private Securities Litigation Reform Act (PSLRA). *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 320-21 (2007).

Under Federal Rule of Civil Procedure 8(a), the plaintiffs-appellants had to provide short and plain statements of jurisdiction and entitlement to relief, and a demand

for the relief sought. They satisfied these requirements by stating that: this action was brought under federal securities laws; AnchorBank allowed its employees to invest in its Unitized Fund, which is an investment option within AnchorBank's 401(k) retirement plan; Hofer was employed by AnchorBank; Plumb Trust is the Trustee for the Fund and is pursuing the claims on behalf of all Fund participants;[2] and they demanded judgment in their favor on the raised claims and were thus entitled to damages, punitive damages, restitution, disgorgement, costs, disbursements, and attorneys' fees. Second Am. Compl. at ¶¶ 1-6, 8, 101A-I.

Under Federal Rule of Civil Procedure 9(b), the plaintiffs-appellants had to state with particularity the circumstances constituting fraud. This ordinarily requires de-

---

[2] We note here that the district court was correct in finding that the plaintiffs-appellants could not bring claims in place of individual Fund participants M and H. Constitutional considerations generally impose limitations on the class of persons who may invoke federal jurisdiction on behalf of another, and the practice is especially disfavored where, as here, the complaint "contains no hint" that the third party is prevented from asserting her or his own rights. *Massey v. Helman*, 196 F.3d 727, 741-42 (7th Cir. 1999). However, it was not improper for the plaintiffs-appellants to file suit on behalf of all Fund participants, and use M and H as examples of the effect of Hofer's alleged activities on the Fund. *See Peoria Union Stock Yards Co. Retirement Plan v. Penn Mut. Life Ins. Co.*, 698 F.2d 320, 325-26 (7th Cir. 1983) (trustee can sue on behalf of the trust and plan participants).

scribing the "who, what, when, where, and how" of the fraud, although the exact level of particularity that is required will necessarily differ based on the facts of the case. *Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 441-42 (7th Cir. 2011). In their complaint, the plaintiffs-appellants alleged that Hofer and two co-conspirators, A and B, were allowed to invest in the Fund because they were all employees of AnchorBank. Second Am. Compl. at ¶¶ 8, 20-21. The Fund is comprised of a combination of cash and AnchorBank stock. The Fund's Trustee manages the Fund, and it is required to maintain a cash-to-stock ratio of 5-to-11%. Second Am. Compl. at ¶¶ 9-11. When Fund participants purchase and sell Fund units, the Trustee is required to buy and sell AnchorBank stock on the open market, at exact times and in specific amounts to be made at its discretion, in order to achieve the requisite cash-to-stock ratio of the Fund. Second Am. Compl. at ¶¶ 14-19. Fund participants, including each of the co-conspirators, were notified of the cash-to-stock ratio requirement of the Fund. Second Am. Compl. at ¶¶ 12, 13. AnchorBank discovered in June of 2009 that Hofer was the mastermind of a plan to knowingly and deliberately coordinate trades in Fund units that would result in large gains for the co-conspirators and losses to the Fund and other Fund participants. Second Am. Compl. at ¶¶ 20-21. Hofer knew that the coordinated trading activity had the ability to, and was intended to, affect the Fund unit prices and the AnchorBank stock prices. Second Am. Compl. at ¶¶ 44-46.

The complaint painted a sufficiently detailed picture of the alleged scheme. For the first step, Hofer and at least

one of the co-conspirators would coordinate their sale of Fund units. This triggered a payout from the Fund's cash reserves to the co-conspirators. Because the Trustee was required to maintain its cash-to-stock ratio of 5-to-11%, it was forced to sell AnchorBank stock on the open market, at market prices, to replenish the Fund's cash reserves. This heightened activity as a result of the collusive trading by the co-conspirators caused the volume of AnchorBank stock on the market to be relatively high as compared to the average daily trading volume of AnchorBank stock, and, given the large volume of AnchorBank stock being sold at or around the same time, the AnchorBank stock price declined. The second step of the alleged scheme involved a coordinated purchase of Fund units by Hofer and at least one of the co-conspirators, which again upset the balance of the Fund's cash-to-stock ratio. Seeking to maintain the ratio as it was required to do, the Trustee bought AnchorBank shares on the open market, and, given the large volume of stock being purchased at or around the same time, the AnchorBank stock price increased. After the AnchorBank stock price was artificially inflated because of the collusive trading activity, the co-conspirators would again conduct a coordinated sale of Fund units, repeating the illicit cycle. Second Am. Compl. at ¶¶ 22-30, 35-40.

Between September 2008 and June 2009, Hofer engaged in 36 collusive trades with his co-conspirators, and, much of the time, the trades represented 100% of the Fund's daily trading activity. Second Am. Compl. at ¶¶ 33-34, 39. These synchronized trades were not coincidental. Second Am. Compl. at ¶ 54. Before or during each of the co-

ordinated transactions, Hofer communicated with the other co-conspirators either in person, by phone, or by email. And on several occasions Hofer would forward the Fund's electronic unit trade confirmation to his co-conspirator, or the co-conspirator would forward the confirmation to Hofer. Second Am. Compl. at ¶¶ 40-41.

Once they realized that their collusive trading scheme was working, the co-conspirators traded in increasingly higher volumes and with greater frequency. Second Am. Compl. at ¶¶ 49, 39. By June 29, 2009, the trio owned 72% of the Fund's unit shares. Hofer alone came to hold nearly 34% of the Fund's shares by that date. And while the value of the Fund's units tumbled from $11 a share to 49 cents a share (a 95% decline), Hofer and the two co-conspirators increased the value of their Fund holdings by 230-to-270%, all without increasing the contributions to their 401(k) accounts. Second Am. Compl. at ¶¶ 61, 50. On June 29, 2009, AnchorBank suspended the trading capabilities of Hofer and his two co-conspirators after the three Fund participants purchased approximately 1,943,986 Fund units, which represented 100% of the Fund's trading that day and 782% of the average trading volume of AnchorBank stock over the next five days. Second Am. Compl. at ¶ 55.

The net result of the collusive trading, according to the complaint, is that Hofer and the co-conspirators enjoyed extraordinary gains as a result of their collusion, while the Fund and other Fund participants, who were not part of the scheme, relied on the artificially high and low Fund unit and stock prices to their financial detriment.

Second Am. Compl. at ¶¶ 31, 32, 47-48, 53. For example, the Fund's Trustee, who was required to determine when and how many AnchorBank stock shares to purchase and sell on the open market to maintain a Fund unit cash-to-stock ratio of 5-to-11%, relied on the fraudulently manipulated Fund values in making its decisions. And Fund participants M and H sold their Fund units at a price that had been artificially deflated as a direct result of the clandestine collusion that was spearheaded by Hofer. Second Am. Compl. at ¶¶ 63-66. We find that the detailed allegations presented in the plaintiffs-appellants' second amended complaint stated with particularity the circumstances constituting a scheme to defraud, and thus satisfied the pleading requirements of Federal Rule of Civil Procedure 9(b).

To show a violation of section 9(a) of the Securities Exchange Act, a private plaintiff must plead and prove that: (1) a series of transactions in a security created actual or apparent trading in that security or raised or depressed the market price of that security; (2) the transactions were carried out with scienter; (3) the purpose of the transactions was to induce the security's sale or purchase by others; (4) the plaintiffs relied on the transactions; and (5) the transactions affected the plaintiff's purchase or selling price. *Chemetron Corp. v. Business Funds, Inc.*, 682 F.2d 1149, 1164 (5th Cir. 1982), *vacated on other grounds*, 460 U.S. 1007 (1983); s*ee also GFL Advantage Fund, Ltd. v. Colkitt*, 272 F.3d 189, 203-06 (3d Cir. 2001) (comparing requirements of §§ 9(a) and 10(b) of the Securities Exchange Act). The elements of a section 10(b) Securities Exchange Act claim are: (1) a material misrepresenta-

tion or omission by the defendant in connection with the purchase or sale of securities; (2) scienter; (3) reliance; (4) economic loss; and (5) loss causation. *Schleicher v. Wendt*, 618 F.3d 679, 681-82 (7th Cir. 2010) (citing *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 341-42 (2005)); *see also Bastian v. Petren Resources Corp.*, 892 F.2d 680, 683-84 (7th Cir. 1990) (analyzing loss causation). Pursuant to the PSLRA, securities fraud complaints must also be able to: (1) specify each misleading statement; (2) set forth the facts on which a belief that a statement is misleading is formed; (3) state with particularity facts giving rise to a strong inference that the defendant acted with scienter; and (4) prove loss causation. *Dura Pharmaceuticals, Inc.*, 544 U.S. at 345-46; *Higginbotham v. Baxter Intern., Inc.*, 495 F.3d 753, 756 (7th Cir. 2007). "The inference of scienter must be more than merely reasonable or permissible—it must be cogent and compelling, thus strong in light of other explanations." *Tellabs, Inc.*, 551 U.S. at 324 (internal punctuation omitted).

We find that the plaintiffs-appellants met the stringent pleading requirements that were required of them in filing their suit against Hofer. On appeal, Hofer argues that AnchorBank and Plumb failed to adequately plead scienter and reliance. We disagree with Hofer's contention that the plaintiffs-appellants failed to adequately plead these elements. The plaintiffs-appellants alleged that Hofer concocted and executed a scheme whereby he would act in cahoots with two other AnchorBank employees to artificially inflate and deflate the value of Fund unit and AnchorBank stock values; the Fund Trustee relied on this manipulation when it decided how to

purchase and sell stock to maintain its required cash-to-stock ratio; and unwitting Fund participants relied on the manipulated Fund unit and AnchorBank stock values when they made their comparatively uninformed purchase and sale decisions. Second Am. Compl. at ¶¶ 20-32. The inference of scienter that is raised in the complaint remains strong in light of competing, plausible explanations offered by Hofer, such as that he was simply following the rudimentary investment strategy of buying low and selling high. And while the competing explanations regarding scienter and reliance could be useful to the trier of fact, they are insufficient in this case to justify dismissal for failure to state a claim on which relief can be granted.

Hofer also argues on appeal that AnchorBank and Plumb failed to adequately allege economic loss and loss causation. The district court, in dismissing the plaintiffs-appellants' claims, also found that the plaintiffs-appellants failed to adequately allege that Hofer caused them to suffer a loss. Hofer and the district court are correct that loss causation is a requisite element in any successful private securities fraud action. *Erica P. John Fund, Inc. v. Halliburton Co.*, 131 S.Ct. 2179, 2183 (2011). We find that AnchorBank and Plumb's second amended complaint adequately alleged economic loss and loss causation.

The complaint alleges that the Fund's Trustee traded AnchorBank stocks on the open market in the wake of fraudulent, coordinated purchases and sales of Fund units by Hofer and his co-conspirators; the heightened activity on the market caused drastic increases and de-

creases in the AnchorBank stock price; Hofer and his co-conspirators caused and amplified the dramatic stock fluctuations by repeating their Fund unit scheme 36 times between September 2008 and June 2009; because of the scheme they were able to amass nearly 72% of the Fund's unit shares; and that while the value of the Fund units plummeted 95%, the trio of co-conspirators were each able to increase the value of their Fund holdings by 230-to-270%. Second Am. Compl. at ¶¶ 20-21, 26, 33-40, 50, 61-64. It is true, as the district court noted in dismissing the plaintiffs-appellants' complaint, that the Trustee had some discretion on how to space out its purchase and sale of AnchorBank stock to maintain the Fund's requisite cash-to-stock ratio. And it is true, as Hofer notes on appeal, that the dramatic decrease in the value of AnchorBank stock could have been influenced by the general economic downturn that impacted the financial services industry. However, we do not require that a plaintiff plead that *all* of its loss is necessarily attributed to the actions of the defendant, only that it plead that the defendant is at least one plausible cause of the economic loss. *Caremark, Inc.*, 113 F.3d at 649 ("[I]t is possible for more than one cause to affect the price of a security and, should the case survive to that point, a trier of fact can determine the damages attributable to the fraudulent conduct."); *see also Ray v. Citigroup Global Markets, Inc.*, 482 F.3d 991, 994-95 (7th Cir. 2007) (analyzing loss causation requirement and noting that a plaintiff must be able to plead and prove that "the defendant's actions had something to do with the drop in value" of the stock).

AnchorBank and Plumb satisfied the applicable pleading standards in bringing their complaint against Hofer. Whether they are able to support the complaint's allegations and raise a genuine issue of material fact for trial, or whether they will ultimately prevail in their suit against Hofer, are separate questions that are not properly decided under the procedural vehicle of a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss.

## III. CONCLUSION

The district court's order dismissing AnchorBank and Plumb's second amended complaint is REVERSED, and the case is REMANDED for further proceedings consistent with this opinion.