# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 12-2365

CINCINNATI LIFE INSURANCE COMPANY,

*Plaintiff,*

*v.*

MARJORIE BEYRER, individually and as
Executrix of the Estate of Kevin Beyrer, and
ESTATE OF KEVIN BEYRER,

*Defendants-Cross-Plaintiffs-*
*Third Party Plaintiffs-Appellants,*

*v.*

STANTON W. GROTENHUIS and CASEY STATE BANK,

*Defendants-*
*Cross-Defendants-Appellees,*

and

MARK SAVOREE,

*Third Party Defendant-Appellee.*

Appeal from the United States District Court
for the Southern District of Indiana, Terre Haute Division.
No. 10-cv-00205—**Larry J. McKinney**, *Judge.*

ARGUED FEBRUARY 14, 2013—DECIDED JULY 8, 2013

Before KANNE and WILLIAMS, *Circuit Judges*, and ZAGEL, *District Judge*.[*]

KANNE, *Circuit Judge*. In 2006, Kevin Beyrer ("Kevin") and his wife Marjorie Beyrer ("Marjorie") moved to Terre Haute, Indiana, to manage several car dealerships owned by Mark Savoree. The next year, Savoree proposed selling the dealerships to the Beyrers through a series of stock purchases to be financed by a $3.5 million loan from Casey State Bank ("CSB"). The Beyrers accepted and began the process of acquiring the dealerships. Soon after negotiating the loan with CSB, Kevin took out a life insurance policy with Cincinnati Life Insurance Co. that named Marjorie as the beneficiary. Two months later, in July 2007, Kevin assigned that life insurance policy to CSB.

The dealership purchase began to fall apart almost immediately, however. Eventually the Beyrers declared bankruptcy, and multiple rounds of litigation between each of the aforementioned parties ensued. During all of this, Kevin was diagnosed with terminal cancer. He passed away in June 2010, which set the stage for an additional fight over the insurance policy proceeds. Cincinnati Life deposited the proceeds, some $3 million, with the Clerk of the Superior Court of Vigo County, Indiana, and sought judicial determination of the rightful owner. This appeal represents a culmination of that quest, including various cross- and third party claims that have been filed along the way.

---

[*] The Honorable James B. Zagel of the United States District Court for the Northern District of Illinois, sitting by designation.

## I. BACKGROUND

Presented with a business opportunity for which he was apparently ill-prepared, Kevin Beyrer decided to take a chance. Having operated car dealerships for others, Kevin accepted Mark Savoree's February 2007 offer to sell several dealerships, primarily Ford, that Savoree owned in the Terre Haute area. Kevin had, in fact, been managing these very dealerships for the better part of the previous year. Kevin and Marjorie did not have the money on-hand to meet the $5 million purchase price for the dealerships and related assets, so they arranged to finance the purchase through a series of loans from Casey State Bank. The loans, totaling over $3.5 million, were made to Ronin Automotive, Inc., a company controlled by the Beyrers. The Beyrers closed on the purchase and the loans in early March 2007.

Soon thereafter—on March 8, 2007—Kevin Beyrer applied for a life insurance policy with Cincinnati Life Insurance Company. Cincinnati Life approved Kevin's application on April 30, and, by May 8, he had purchased the policy and named his wife the primary beneficiary. Later that summer, however, Kevin executed an assignment of the policy to CSB. The assignment stated that it was made "for [v]alue [r]eceived." (R. 58-1.) Among the rights not assigned was the right "to receive . . . any disability income." (*Id.*) Cincinnati Life recorded the assignment in its corporate records on August 4, 2007.

Although each party paints the picture slightly differently, it is apparent that the sale of the dealerships was troubled from the beginning. For instance, because the

dealerships were part of the Ford network, Ford had to approve the Beyrers and the franchise transfer. Though sought, this approval was never obtained. Further, despite the loans having been signed in March, it seems that the terms—particularly who would or should guarantee the loans—continued to be disputed throughout 2007.

Eventually, CSB restructured the original loans. These restructured loans, made in January 2008, were in the name of the Beyrers individually and in companies they controlled. Very shortly after the restructure, however, the loans went into default. On March 3, 2008, CSB called in the loans and began seizing money in the Beyrers' personal and corporate accounts. On March 10, 2008, CSB obtained judgments on the restructured loans against the Beyrers and entities they controlled. On March 26, CSB assigned its interest in these judgments and the life insurance policy to Stan Grotenhuis (whom Marjorie characterizes as the "Founder and . . . owner" of CSB (Appellant's Br. at 13)). In the midst of what was already a difficult time period, Kevin Beyrer was diagnosed with terminal cancer on May 25, 2008. On September 11, 2008, the Beyrers filed for Chapter 7 bankruptcy. They were discharged on December 24, 2008.

During most of 2008, there were ongoing court proceedings involving these same parties (CSB, Savoree, the dealerships, the Beyrers, and the Beyrers' companies) in Clark County, Illinois, based on the March 10 judgment (Circuit Court of Clark County, Illinois, Case No. 08-L-04). Although the Beyrers were dismissed from the litigation by virtue of their bankruptcy filing in Septem-

ber 2008, the state court continued to sort out the ramifications of the failed dealership sale. This process included liquidating assets of the dealerships and deposing various people in an attempt to parse out blame. There also appears to have been a separate, though related, fraudulent transfer case brought by CSB against Savoree in Illinois state court. (R. 154 at 1-2) (referencing Circuit Court of Clark County, Illinois, Case No. 2010-CH-17).

On May 14, 2010, Kevin Beyrer applied for benefits under the Cincinnati Life insurance policy. Although Marjorie described these in an affidavit as "disability benefits," (R. 72 at 2), they are more aptly described as an advance on the standard proceeds of the policy. The "Accelerated Benefit Rider" allowed an insured to receive "part of the policy's death benefit" if a doctor diagnosed him with a terminal illness that would result in death within the next twenty-four months. (*Id.* at 5.) While this money is likely intended to help cover end-of-life healthcare costs, it is not separate from the overall payout of the policy. Cincinnati Life refused to release any part of the proceeds to Kevin because neither CSB nor Grotenhuis, who now owned the assignment, would consent.

Kevin Beyrer died on June 17, 2010, triggering the life insurance policy's death benefit and a dispute between the parties over its true owner. Cincinnati Life filed a Complaint for Interpleader and Declaratory Judgment in the Superior Court of Vigo County, Indiana, to determine the proper owner of the funds. On an order of that court, Cincinnati Life deposited the policy proceeds with the Clerk of Court.

Grotenhuis answered the complaint, but Marjorie removed the case to the U.S. District Court for the Southern District of Indiana. Once there, she filed her "Answer and Cross Claim and Third Party Claim" on August 5, 2010. (R. 6.) This filing attempted to state Marjorie's claim for the policy proceeds, as well as allege various causes of action against CSB, Grotenhuis, and Savoree. For the next year, the defendants repeatedly pointed out the flaws in Marjorie's filing, she repeatedly requested leave of the court to amend it, and the district court granted those requests.

Eventually, in March 2011, Grotenhuis filed a motion for summary judgment with respect to the policy proceeds. (R. 54.) Marjorie filed a cross-motion for summary judgment the next month. (R. 79.) On September 22, 2011, the court granted summary judgment in favor of Grotenhuis on the limited issue of entitlement to the policy proceeds ("Proceeds Order"). (R. 127.) Immediately after the court entered the Proceeds Order, Marjorie moved to modify the order to award her $250,000, which she claimed was due her under the "Accelerated Benefit Rider." (R. 129.) The next month, Marjorie filed a motion to reconsider the judgment in its entirety based on what she claimed was newly discovered evidence. (R. 149.) The district court rejected both of these motions on February 8, 2012. (R. 254.)

The week after entering the Proceeds Order, the district court granted Marjorie's request to amend her complaint for the third time. (R. 132.) In so doing, it admonished her that "no further amendments will be

permitted." (*Id.*) Marjorie's "Third Amended Answer, Cross Claims and Third Party Claims" alleged seven separate claims for relief against CSB, Grotenhuis, and Savoree. (R. 100.) After briefing, the district court dismissed Marjorie's first, second, third, and seventh claims with prejudice on February 16, 2012, for failing to meet pleading standards. (R. 255.) CSB and Grotenhuis moved for summary judgment on the remaining claims; Marjorie did not respond to that motion. The district court entered summary judgment for CSB and Grotenhuis on the remaining claims on May 7, 2012. (R. 271.)

## II. ANALYSIS

Marjorie Beyrer[1] has brought this appeal challenging each of the decisions that the district court decided against her. By way of review, those decisions are: (1) the grant of summary judgment on the proceeds issue; (2) the rejection of the motions to modify and reconsider; (3) the dismissal of claims one, two, three, and seven; and (4) the entry of summary judgment on claims four, five, and six. Because of the rather complicated procedural history of this case and the large number of issues to be addressed, we will structure our review as follows: first, we will consider the dismissals of the Beyrers' cross-claims

---

[1] Marjorie Beyrer brings this appeal in a variety of capacities—individually, on behalf of her late husband's estate, and as the executrix of that estate. Because she is the only person bringing the appeal, we will keep things as simple as this case permits and refer to her as "appellant."

and third party claims for failing to meet pleading standards; second, we will review the district court's grant of summary judgment on claims four through six; third, we will address the district court's grant of summary judgment on the life insurance proceeds distribution; and finally, we will review the court's denial of Marjorie's motions for modification and reconsideration. Finding no merit in any of the issues appealed, we affirm the district court's judgments.

### A.  Dismissal of Cross-Claims and Third Party Claims One, Two, Three, and Seven

The district court dismissed appellant's first, second, third, and seventh claims for failure to comply with federal pleading standards. (R. 255.) Specifically, the district court held that the first and second claims violated Fed. R. Civ. P. 8 and 10(b), and that the third and seventh claims, being putatively fraud-based, violated Fed. R. Civ. P. 9(b). We agree with the district court that appellant's complaint did not meet the basic pleading standards envisioned by the Federal Rules.

We review the district court's dismissal *de novo*. *Alexander v. McKinney*, 692 F.3d 553, 555 (7th Cir. 2012). When "[e]valuating the sufficiency of the complaint, we construe it in the light most favorable to the nonmoving party, accept well-[pled] facts as true, and draw all inferences in her favor." *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1146 (7th Cir. 2010). "Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we

are not bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (internal quotation marks omitted). The "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). We address each of appellant's claims below.

### 1. *Claims one and two*

The district court dismissed appellant's first and second claims for failure to comply with Fed. R. Civ. P. 8 and 10. Rule 8 requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 10(b) provides that claims should be set out "in numbered paragraphs, each limited as far as practicable to a single set of circumstances" and that "each claim founded on a separate transaction or occurrence . . . must be stated in a separate count or defense." Fed. R. Civ. P. 10(b). The district court observed that, even after being given multiple opportunities to revise her complaint, "it is difficult to see how [appellant's first two claims] comply with Rule 10(b), either in technicality or in spirit." (R. 255 at 7.) We agree.

"The primary purpose of [Fed. R. Civ. P. 8 and 10(b)] is to give defendants fair notice of the claims against them and the grounds supporting the claims." *Stanard v. Nygren*, 658 F.3d 792, 797 (7th Cir. 2011). "[W]here the lack of organization and basic coherence renders a complaint too confusing to determine the facts that con-

stitute the alleged wrongful conduct, dismissal is an appropriate remedy." *Id.* at 798. If neither the adverse party nor the court can make out the essence of the claims "dismissal of a complaint on the ground that it is unintelligible is unexceptionable." *United States ex rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 378 (7th Cir. 2003). That being said, "[a] district court is not authorized to dismiss a complaint merely because it contains repetitious and irrelevant matter." *Id.* (internal quotation marks omitted). Rather, we have found complaints wanting when they present a "vague, confusing, and conclusory articulation of the factual and legal basis for the claim and [take] a general 'kitchen sink' approach to pleading the case." *Stanard*, 658 F.3d at 798. Such complaints frustrate Rule 8's objective: "fram[ing] the issues and provid[ing] the basis for informed pretrial proceedings." *Id.* at 797 (internal brackets omitted). "[J]udges and adverse parties need not try to fish a gold coin from a bucket of mud," *Garst*, 328 F.3d at 378; dismissal is the appropriate remedy for district courts presented with "a bucket of mud."

The first hints that the claims here do not comply with federal pleading standards come from their titles. Claim one is labeled: "Breach of Contract, Breach of Fiduciary Duty, Fraud (Actual and Contructive), Negligence, Promissory Estoppel." (R. 100 at 8.) Claim two is titled: "Negligence, Breach of Contract, Breach of Fiduciary Duties, Actual and Constructive Fraud, Promissory Estoppel (Against Mr. Savoree), Fraud, Breach of Contract, Conversion (Against CSB)." (R. 100 at 12.) As the district court noted, the first claim "assert[ed] at

least five separate causes of action," (R. 255 at 7), and the second claim is no better; these are hardly the "separate count[s]" the Federal Rules envision. Fed. R. Civ. P. 10(b). And the confusion continues throughout the substance of the claims, which are laid out in over 88 numbered paragraphs, each of which can stretch for over a third of a page. "The [first claim's] alleged causes of action are related only insofar as [appellant] allege[s] that Mr. Savoree undertook the actions in question." (R. 255 at 7.) The second claim lacks even that modest virtue; it purports to assert a variety of causes of action against both Savoree and CSB. Appellant made no attempt to connect specific facts or events with the various causes of action she asserted.

Appellant's complaint strikes us as exactly the type of "kitchen sink approach to pleading" that we have previously found to violate the Federal Rules. *Stanard*, 658 F.3d at 798 (internal quotation marks omitted). At times, appellant's convoluted language even renders it unclear precisely what fact she has attempted to allege. For instance: "Mr. Beyrers [sic] and/or Mrs. Beyrer never received a copy of this letter and Mr. Savoree and/or CSB did not disclose it to Mr. and/or Mrs. Beyrer in a timely fashion." (R. 100 at ¶ 88.)[2] To this can be added myriad other syntactical and grammatical errors (*e.g., id.*

---

[2] To understand the difficulty of adequately responding to such a complaint, it is worth noting that in this one sentence alone there are 27 different possible permutations of the allegation (there are three variables in the sentence, each with three possible values). This was not appellant's most complex sentence.

at ¶ 46) ("Mr. Savoree and were in CSB, through its officers and board members including Mr. Wolfe and Lena Grotenhuis, negotiations between themselves to materially change the March 2007 loan agreement and reduce Mr. Savoree's guarantee.").

Given this morass, we do not think that the first two claims "frame[d] the issues and provide[d] the basis for informed pretrial proceedings." *Stanard*, 658 F.3d at 797 (internal brackets omitted). As can be adduced from the title of the "Third Amended Answer and Cross Claim and Third Party Claim," the district court gave appellant multiple opportunities to bring her pleadings up to federal standards. (R. 132.) We agree with the district court that appellant was unsuccessful at accomplishing this task. Dismissal of claims one and two was appropriate.

### 2.  *Claims three and seven*

Claims three and seven were both dismissed for failing to meet Fed. R. Civ. P. 9(b)'s heightened pleading standard for fraud-based claims. We address them in order below.

### a.  *Claim three*

Appellant's third claim was "Conspiracy (Against Mr. Savoree and CSB and Mr. Grotenhuis)." (R. 100 at 24.) As the district court pointed out, however, appellant did "not specify the underlying illegal activity forming the object of the conspiracy." (R. 255 at 9.) The court read

the complaint to "suggest a conspiracy to commit fraud." (R. 255 at 9-11.) Fraud-based claims, however, face a heightened pleading standard. *See* Fed. R. Civ. P. 9(b). On that basis, the court found that appellant had failed to meet the heightened standard, and dismissed the claim. We agree with the district court's decision.

As an initial matter, appellant does not challenge, and indeed appears to confirm, the district court's understanding that her third claim was based in fraud. (Appellant's Br. at 63-65.) We will therefore presume that the district court's interpretation was correct: the conspiracy alleged was in fact a conspiracy to commit fraud, and the third claim should be held to the heightened pleading standard in Fed. R. Civ. P. 9(b).

Fed. R. Civ. P. 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting fraud." We have read this rule to require "describing the 'who, what, when, where, and how' of the fraud." *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 615 (7th Cir. 2011). We have noted that the purpose of this particularity requirement is "to discourage a 'sue first, ask questions later' philosophy." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 441 (7th Cir. 2011). "Heightened pleading in the fraud context is required in part because of the potential stigmatic injury that comes with alleging fraud and the concomitant desire to ensure that such fraught allegations are not lightly leveled." *Id.* at 442. We have also cautioned, however, that "the exact level of particularity that is required will necessarily differ based on the facts of the case." *Hofer*, 649 F.3d at 615.

Emblematic of our desire to balance particularity with situation-specific flexibility is our treatment of fraud claims pled on "information and belief." This phrase is used by plaintiffs who have a good-faith belief in the allegations they make, but nevertheless make those allegations based on secondhand information. *Pirelli*, 631 F.3d at 442 (*citing* Black's Law Dictionary 783 (7th ed. 1999)). We frown on making allegations "on information and belief" in the fraud context and generally find that such claims do not meet Rule 9(b)'s particularity requirement. *Id.* at 442-43; *Bankers Trust Co. v. Old Republic Ins. Co.*, 959 F.2d 677, 683-84 (7th Cir. 1992) ("The allegations of fraud that it *was* required to make, however, are made in its complaint on 'information and belief,' a clearly improper locution under the current federal rules, which impose . . . a duty of reasonable precomplaint inquiry not satisfied by rumor or hunch."). "[T]he practice is permissible, [however,] so long as (1) the facts constituting the fraud are not accessible to the plaintiff and (2) the plaintiff provides the grounds for his suspicions." *Pirelli*, 631 F.3d at 443 (internal quotation marks omitted). Therefore, while we require a plaintiff claiming fraud to fill in a fairly specific picture of the allegations in her complaint, we "remain sensitive to information asymmetries that may prevent a plaintiff from offering more detail." *Id.*

And indeed, appellant argues that she is the victim of just such an information asymmetry—that she did not know, and could not have known, the information that the district court required when it dismissed the claim. The appellant claims she was waiting for dis-

covery to access information in the hands of the appel-
lees. As such, she couched her claim in "information
and belief" and made broad generalizations rather than
specific statements.

Undoubtedly, had the appellant had access to more
information, she could have injected more particulars
into her complaint. But that does not suffice to explain
the myriad shortcomings that infected the claim as it
stands. Even with limited information, we expect plain-
tiffs to attempt to describe the "who, what, when, where,
and how" of the fraud, so that opposing parties
can respond effectively, and the trial judge can set an
appropriate course for the litigation process. This was
all but impossible with the third claim as it stood.
There were few specifics offered, even when the infor-
mation should have been available (indeed, perhaps
necessarily available, given the allegations) to the appel-
lant.

To begin, because the "Conspiracy" claim appears to
refer to conspiracy to commit a fraud described in the
first two claims, all of the errors in the first two claims
(described above) also infect the third claim. The first
two claims are a jumble of allegations against multiple
parties, which makes "who" committed the fraud un-
clear. The "when" is no clearer. As the district court
noted, appellant failed "to specify times and dates
any more clearly than 'from July 2007 through the Janu-
ary 28, 2008 closing on the Second Loan' or 'prior to
closing the Second Loan and/or at or around the time of
closing the Second Loan' or '[f]rom August 2007 through

December 2007.' " (R. 255 at 10) (*quoting* R. 100 at ¶¶ 44, 67, 109).

Most importantly, there was minimal effort to connect specific behaviors to specific causes of action, which makes it exceedingly unclear what the fraud actually was. Rule 9(b) requires particular references to specific alleged fraudulent activities. Here, appellant spent a great deal of energy insinuating that fraud occurred, but failed to identify these all-important details. Even when the complaint mentions details, there is enough hedging that they cannot be said to have been identified with particularity; for example:

> CSB and/or Mr. Savoree knew or should have known at or prior to the closing of the Second Loan that the debt load for the Second Loan was not acceptable to Ford and/or Ford would not approve the transfer of the Franchise without new equityand/or [sic] Ford was not inclined to approve the Franchise Transfer for other reasons such as concerns that a proven positive track record was not established.

(R. 100 at ¶ 61.) Such a statement could fairly be read to allege many different things or possibly nothing at all. Indeed, some of the appellant's attempts to explain her complaint to this court end up more confusing than helpful. (*e.g.*, Appellant's Reply Br. at 20) ("¶22 the subject is Mr. Savoree's induced the Breyer's to purchase the property by promising to secure finance with a 2.5 million loan guarantee loan guarantee, the amount, purpose (secure financing)."). We therefore agree with

the district court that the third claim does not meet Rule 9(b)'s heightened pleading standard.

*b. Claim seven*

The district court also dismissed appellant's seventh claim, "Promissory Estoppel and/or Unjust Enrichment (Against Mr. Savoree and CSB)" for failure to meet the heightened pleading standard that Rule 9(b) imposes. Again, we agree.

In its March 23, 2011, order, the district court determined that the appellant's promissory estoppel and unjust enrichment claims "sound[ed] in fraud" and should thus be held to Fed. R. Civ. P. 9(b)'s heightened pleading standard. (R. 59 at 15) (*citing Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007) for the proposition that Rule 9(b)'s heightened pleading standard is not restricted to claims of fraud, but may apply to claims whose factual allegations depend on fraud). Appellant does not challenge this facet of the district court's decision, and, in any case, we agree with the district court. As best we can tell, appellant's promissory estoppel and unjust enrichment claims emerge out of a pattern of fraudulent conduct that she insinuates the appellees engaged in. This falls under the Fed. R. Civ. P. 9(b) requirement that allegations of fraud must be pled with particularity. *See Pirelli*, 631 F.3d at 447-48 (holding an unjust enrichment claim to the Rule 9(b) standard); *see also Borsellino*, 477 F.3d at 507 (application of Rule 9(b) depends on facts of the case).

To remind the reader, to comply with Fed. R. Civ. P. 9(b), a plaintiff "must state with particularity the circumstances constituting fraud." And that means "describing the 'who, what, when, where, and how' of the fraud." *Hofer*, 649 F.3d at 615. As the district court observed, appellant failed at this task. The "when" is not described with any more specificity than in count three: the relevant events are alleged to have occurred sometime "beginning in July 2007 and continuing until January 28, 2008." (R. 100 at ¶ 123.)[3] Appellant's "and/or" formulations obscure the identifications of the relevant parties and make deciphering the allegations overly complicated. (R. 100 at ¶ 125) ("CSB and/or Mr. Savoree made the promise to Mrs. And/or Mr. Beyrer . . . .")[4] Moreover, appellant fails to identify who made these representations on CSB's behalf.

Appellant's only response is to protest that her pleadings were sufficiently clear to satisfy the policy goals of Rule 9. The Rule, appellant says, is "meant to require the plaintiff to do more than the usual investigation before filing his complaint." (Appellant's Br. at 63) (*citing United States ex rel. Fowler v. Caremark RX, LLC*, 496 F.3d 730, 740 (7th Cir. 2007).) And here, appellant

---

[3] Readers should note that this is the "¶ 123" that appears on page 31 of appellant's "Third Amended Answer and Cross Claim and Third Party Claim," rather than the ¶ 123 that appears on page 27. The paragraph numbers restart at 119 after ¶ 150, which is yet one more example of how confusingly this complaint was constructed.

[4] Again, please note that this is the ¶ 125 on page 31.

contends that she (or, more realistically, her counsel) has done "more than the usual," including "traveling to the remote reaches of Illinois." (*Id.*) We are sympathetic to the travel required to find far-off court reporters, and we do not wish to cast aspersions on the level of effort expended by appellant or her counsel. But Fed. R. Civ. P. 9(b) does more than simply mandate that attorneys show some increased amount of work. Rather, "the rule requires the plaintiff to conduct a precomplaint investigation in sufficient depth to assure that the charge of fraud is responsible and supported." *Ackerman v. Nw. Mut. Life Ins. Co.*, 172 F.3d 467, 469 (7th Cir. 1999). That is, the effort must manifest itself in the complaint through the familiar "who, what, when, where, and how" requirements. That, appellant did not achieve. We agree with the district court that dismissal of the seventh claim for failure to meet Fed. R. Civ. P. 9(b)'s heightened pleading standard was appropriate.

B. *Summary Judgment of Cross-Claims and Third Party Claims Four, Five, and Six*

The district court granted summary judgment to the appellees on the three other claims included in appellant's "Third Amended Answer and Cross Claim and Third Party Claim." (R. 271.) Appellant nominally challenges this judgment in her brief to this court by listing the claims among those she appeals in the heading of Section IX.B: "The District Court Committed Prejudicial Error in Dismissing Claims One through Four, Six and Seven From the Complaint With Prejudice." (Appellant's Br. at 62.) As is perhaps evident from this title, how-

ever, appellant has misidentified the basis for the district court's ruling (and altogether dropped claim five). Claims four through six were not "dismissed" for failing to state a claim or failing to meet pleading standards (as claims one, two, three, and seven were); rather, the district court entered summary judgment because there was no genuine issue on which a reasonable jury could return a verdict in appellant's favor. (R. 271.) Nothing in Section IX.B indicates that appellant appreciates this distinction: there is no citation to the summary judgment standard and no discussion of how the record on these claims might create a triable issue of fact. Indeed, appellant did not even respond in district court to the motions requesting summary judgment on these claims. If a party moving for summary judgment has properly supported his motion, the burden shifts to the nonmoving party to "come forward with specific facts showing that there is a *genuine issue for trial.*" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks omitted); *accord Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012). Appellant has not done so at any point in this case. The district court's entry of summary judgment on these claims was correct.

## C. *Summary Judgment on the Insurance Proceeds Question*

The district court also granted summary judgment on the issue that kicked off this particular round of litigation: the distribution of the insurance proceeds. (R. 127.) The court determined that the July 2007 policy assignment from Kevin to CSB was valid, and therefore

that Marjorie did not have a claim to the proceeds of the policy. The appellant challenges that determination.

A district court should dispose of an issue on summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To survive a motion for summary judgment, "the nonmoving party must establish some genuine issue for trial such that a reasonable jury could return a verdict in her favor." *Gordon v. FedEx Freight, Inc.*, 674 F.3d 769, 773 (7th Cir. 2012). To create a "genuine" issue, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586; *accord Carroll*, 698 F.3d at 564. On appeal, "[w]e review a district court's grant of summary judgment *de novo*, drawing all reasonable inferences and viewing all facts in favor of the non-moving party." *Fitzgerald v. Santoro*, 707 F.3d 725, 730 (7th Cir. 2013). Here, we think the district court was correct to enter summary judgment in favor of the appellees.

We note, as the district court did, that the assignment is valid on its face. (R. 127 at 8.) The policy provides that "[t]he rights of the owner and beneficiary will be subject to the rights of any assignee," (R. 1-3 at 10), while the assignment states that it grants CSB the right "to collect from [Cincinnati Life] the net proceeds of the policy when it becomes a claim by death or maturity," (R. 1-4.) Furthermore, the assignment specifically provides that it is being given "for [v]alue [r]eceived." (*Id.*)

In Illinois,[5] "any language that demonstrates the intent to transfer some identifiable property from one party to another for valuable consideration is sufficient to establish an assignment." *Martin v. City of O'Fallon*, 670 N.E.2d 1238, 1241 (Ill. App. Ct. 1996). And, assignments of life insurance policies are permissible in Illinois. 215 ILCS 5/245.1. But, appellant argues, this assignment was not supported by consideration, and the district court was wrong to hold otherwise.

It is worth pausing at this point to note that, in reviewing the district court's grant of summary judgment, we are limited to considering the record that the court had before it at the time. *MMG Fin. Corp. v. Midwest Amusements Park, LLC*, 630 F.3d 651, 657 (7th Cir. 2011).

---

[5] Because this is a diversity case, state substantive law applies. *See Blood v. VH-1 Music First*, 668 F.3d 543, 546 (7th Cir. 2012). As the district court correctly noted, assignments of insurance policies are governed by the law of the place where the assignment is made. (R. 127 at 7). Here, the assignment was made in Illinois. (*Id.*) Appellant argued in the district court that the law of Indiana should govern, as the Beyrers lived in Indiana during all relevant periods. This formulation of the law was wrong, but the district court nevertheless indulged appellant and demonstrated that, even under Indiana law, the assignment would be valid. (*Id.* at 8-10.) Appellant has abandoned this line of argument on appeal. Thus, our review of the substance of the assignment is governed by Illinois law. *See Monarch Discount Co. v. Chesapeake & Ohio Ry. Co. of Ind.*, 120 N.E. 743, 745 (Ill. 1918) (the effect of a valid assignment on the rights of the parties depends on the place of assignment).

In arguing that the entry of summary judgment was in error, appellant seems to include facts presented for the first time in her subsequent motions to modify and reconsider. This is not only unhelpful, it is an impermissible argument. *Joseph P. Caulfield & Assocs., Inc. v. Litho Prods., Inc.*, 155 F.3d 883, 888 (7th Cir. 1998). Accordingly, we will review the same record that the district court reviewed in entering summary judgment.

With that in mind, we find that appellant did not present enough, or any, evidence to the district court to create a genuine disputed issue of material fact. True, appellant identified lack of consideration as a potential disputed fact in her brief in opposition to summary judgment. (R. 71 at 12-13.) But this assertion was simply made and repeated without any support or citation to evidence. (*Id.*); (*id.* at 2) ("Mr. Beyrers [sic] assigned the policy . . . apparently without consideration"); (*id.* at 5) ("[t]he alleged assignment mentions no consideration . . .").[6] The situation presented to us is therefore essentially this: we have an otherwise valid assignment that purports to have been made for valuable consideration, and we have an appellant who says, in short, "no, it was not." To us, this seems the very definition of "[m]ere metaphysical doubt as to the material facts." *Carroll*, 698 F.3d at 564 (internal quotation marks omitted). And that, as we have repeatedly recognized, is not enough to prevent summary judgment.

---

[6] Note that this last assertion is not true, as the assignment *does* state that it was made "for [v]alue [r]eceived." (R. 1-4.)

*Id.* Such is the case here. There was no genuine issue of material fact appropriate for trial, and the district court correctly entered summary judgment for the appellees.

### D. *Motions to Reconsider*

Finally, we take up the district court's denial of appellant's "motion for modification" and her "motion for reconsideration" of the insurance proceeds distribution order. This is the proper juncture at which to consider the evidence that appellant added to the record after the entry of summary judgment. *See Caulfield*, 155 F.3d at 888.

The district court's treatment of the motions, which the court discussed together in a single three-paragraph section of its order, is not as clear as it might be. While the district court appeared to analyze both motions under the Fed. R. Civ. P. 59(e) standard, appellant's second motion could theoretically also be construed as a Rule 60(b) motion. The court never specifically stated whether it was reviewing either motion under Rule 59(e) or 60(b), and cites an opinion, *Harrington v. City of Chi.*, 433 F.3d 542, 546 (7th Cir. 2006), that discusses both. (R. 254 at 4.) Appellant seems to argue that analyzing the motions under the same standard was improper, but fails to propose an alternate standard to proceed under and seems confused about which motion could have been analyzed under such an alternate standard. (Appellant's Br. at 58) ("The district court reasoned that the Motion to Modify [the first motion] was actually a motion to reconsider in disguise. However, Counsel

was not engaging in semantics but, rather, analysis."). Ultimately, however, whatever contrast appellant attempts to draw between these motions is inconsequential.

Several factors convince us that it is proper to analyze both motions under Rule 59(e). First, the district court, as evidenced by its analysis, apparently understood both motions to be Rule 59(e) motions. The district court's treatment makes procedural sense because both motions were filed within the 28-day time limit that Rule 59(e) prescribes. *See* Fed. R. Civ. P. 59(e); *cf. Justice v. Town of Cicero, Ill.*, 682 F.3d 662, 665 (7th Cir. 2012) ("an untimely Rule 59 motion is treated as a motion under Rule 60(b)"). Further, appellees refer to appellant's "rule 59 *motions*," which lends credence to the theory that both motions were understood by the parties and the court as Rule 59(e) motions at the time. (*e.g.*, Appellee's Br. at 38.) And finally, we have previously implied that the threshold of proof for the moving party is somewhat lower under Rule 59(e) than under Rule 60(b). *See Harrington*, 433 F.3d at 546 (describing Rule 59(e)'s standard that a movant must "clearly establish" grounds for relief as a "contrast" with the "extraordinary remedy" of Rule 60 relief); *see also Romo v. Gulf Stream Coach, Inc.*, 250 F.3d 1119, 1121 n.3 (7th Cir. 2001) ("Rule 59(e) generally requires a lower threshold of proof than does Rule 60(b)"). Thus, even if we misapprehend appellant's argument, she is not prejudiced by that misunderstanding: if she could not meet the lower Rule 59(e) burden in the district court, she would not have met the higher Rule 60(b) burden.

Although the moving party's burden is different under each rule, "[r]egardless [of whether one proceeds under Rule 59(e) or 60(b)], we review decisions under each rule only for abuse of discretion." *Harrington*, 433 F.3d at 546. An appellant establishes an abuse of discretion only when "no reasonable person could agree with the [decision of the district] court." *Jones v. Lincoln Elec. Co.*, 188 F.3d 709, 735 (7th Cir. 1999). We conclude that the district court did not abuse its discretion here.

### 1. *Appellant's motion for modification*

Two days after the district court entered summary judgment on the issue of the insurance proceeds, appellant filed a motion for modification, (R. 128), accompanied by a three page "Brief in Support of Motion for Modification of the Court's Order of September 22, 2011 (Doc. 127) to Give Effect to the First Paragraph of the Assignment, to wit; the Disability Exclusion," (R. 129). Appellant submitted that the court had "overlooked" the second paragraph of the assignment, which directed that "any disability income" was not assigned. (R. 129 at 2.) This clause, appellant argued, entitled Marjorie to the $250,000 "accelerated death benefit" that the original policy allowed, even if CSB was due the remainder under the assignment. (*Id.* at 2-3.)

The district court rejected appellant's motion. (R. 254.) The district court held that appellant had the opportunity to make this argument during the summary judgment proceedings. Indeed, she made such an argument in her initial complaint. She did not, however, choose to

argue it during the summary judgment phase. The district court noted that motions to reconsider were not an opportunity to present arguments that could have been raised previously, (*id.* at 5) (*citing Moro v. Shell Oil Co.*, 91 F.3d 872, 876 (7th Cir. 1996)), and rejected the motion. We do not find that rejection to be an abuse of the district court's discretion.

A Rule 59(e) motion will be successful only where the movant clearly establishes: "(1) that the court committed a manifest error of law or fact, or (2) that newly discovered evidence precluded entry of judgment." *Blue v. Hartford Life & Accident Ins. Co.*, 698 F.3d 587, 598 (7th Cir. 2012). The appellant's argument does not fit either set of circumstances.

The appellant suggests that an argument about the accelerated death benefit would not have been timely at the summary judgment phase because "before the exclusion could be decided, ownership needed to be determined." (Appellant's Br. at 59.) This statement is incorrect. Grotenhuis moved for summary judgment as to *all* of the proceeds of the insurance policy. (R. 54.) Appellant was therefore on notice that, if she had an argument about her entitlement to any portion of the policy, she had to present it. While appellant argued that she was entitled to the entire policy, an argument about the accelerated death benefit would have been a textbook example of an argument in the alternative. Appellant chose not to make this alternative argument, whether for reasons of strategy or mere oversight.

> Rule 59(e) allows the movant to bring to the
> district court's attention a manifest error of law

or fact, or newly discovered evidence. It does not provide a vehicle for a party to undo its own procedural failures, and it certainly does not allow a party to introduce new evidence or advance arguments that could and should have been presented to the district court prior to the judgment.

*Bordelon v. Chi. Sch. Reform Bd. of Trs.*, 233 F.3d 524, 529 (7th Cir. 2000) (internal citation and quotation marks omitted). The district court correctly held that a motion under Fed. R. Civ. P. 59(e) was not the appropriate forum for appellant's argument. Under these circumstances, we cannot conclude that the district court abused its discretion.

### 2. *Appellant's motion for reconsideration*

The district court's ruling on appellant's motion for reconsideration is a closer question. Appellant moved for reconsideration and urged the court to revise its judgment in light of what she described as newly discovered evidence. Specifically, appellant presented deposition testimony from a separate case (involving some of the same parties) that showed CSB had not yet contemplated a second loan to the Beyrers by September 2007. Therefore, appellant argued, the district court's finding that the second loan was consideration for the assignment, executed in June 2007, must be incorrect. The court dismissed this argument as simply "request[ing] that the Court re-analyze the Proceeds Order in its entirety as applied to her interests." (R. 254 at 5.) While we

disagree with the district court's characterization, we do not think that the court abused its discretion in rejecting the motion.

As a reminder, "[t]o prevail on a Rule 59(e) motion to amend judgment, a party must clearly establish (1) that the court committed a manifest error of law or fact, or (2) that newly discovered evidence precluded entry of judgment." *Blue*, 698 F.3d at 598 (internal quotation marks omitted). Here, we are concerned with the second option: newly discovered evidence.

> To succeed on a motion under Rule 59 [by invoking newly discovered evidence], a party must show that: (1) it has evidence that was discovered post-trial; (2) it had exercised due diligence to discover the new evidence; (3) the evidence is not merely cumulative or impeaching; (4) the evidence is material; and (5) the evidence is such that a new trial would probably produce a new result.

*Envtl. Barrier Co., LLC v. Slurry Sys., Inc.*, 540 F.3d 598, 608 (7th Cir. 2008); *see also Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1269 (7th Cir. 1996) ("the moving party must show not only that this evidence was newly discovered or unknown to it until after the hearing, but also that it could not with reasonable diligence have discovered and produced such evidence during the pendency of the motion [for summary judgment]") (internal brackets and quotation marks omitted). We emphasize again that we review the district court's denial of a Rule 59(e) motion only for abuse of discretion. *Zivitz v. Greenberg*, 279 F.3d 536, 539

(7th Cir. 2002). Here, we are convinced that the district court did not abuse its discretion when it denied appellant's motion.

In the Rule 59 context, the moving party must clearly establish that the new evidence "would probably produce a new result" in a new trial. *Envtl. Barrier Co.*, 540 F.3d at 608; *see also Blue*, 698 F.3d at 598 (moving party must "clearly establish" grounds for relief). Certainly, the evidence that appellant presented to the district court in her motion for reconsideration casts a new light on the court's decision. Indeed, if the testimony is to be believed, it appears that the court's finding that the second loan functioned as consideration for the assignment was erroneous. Note, though, that this deposition testimony does not clarify whether there actually *was* consideration; it tells us only that the district court's supposition about the form of the consideration may have been incorrect. So this new evidence was potentially useful, even though it was not dispositive. That is, while the deposition testimony might make a different outcome in a hypothetical new proceeding *possible*, it does not necessarily make such an outcome *probable*. *See Marcus & Millichap Inv. Servs. of Chi., Inc. v. Sekulovski*, 639 F.3d 301, 314 (7th Cir. 2011) (requiring probability in the Rule 59 context).

Important to our ultimate decision is the abuse of discretion standard under which we review the denial of a Rule 59 motion. "A court abuses its discretion only when no reasonable person could agree with the decision to deny relief." *Nelson v. Napolitano*, 657 F.3d 586, 591 (7th Cir. 2011). Here, we think the substantive ques-

tion—whether the evidence would have made a different outcome probable—is a close one. That closeness, though, speaks to the fact that reasonable people could come to either conclusion. And because reasonable people could conclude that the district court's ultimate decision was correct, we cannot find that the court abused its discretion by denying the motion.

Furthermore, the timing is problematic for appellant. The deposition in question was taken July 27, 2009, during the course of another lawsuit, involving many of the same parties as this case, about the fallout from the failed dealership sale and the final disposition of the assets involved in the sale. (R. 154 at 1.) Appellant was a party to that lawsuit prior to filing for bankruptcy. Though she now pleads ignorance to the developments in that case after she was excused, appellant was certainly aware that issues related to her interests were being litigated and had the opportunity to inquire about relevant testimony long before the district court entered summary judgment. She failed to make such inquiries until well into the litigation process, which does not demonstrate due diligence on her part. Simply put, "[a] party may not use a motion for reconsideration to introduce new evidence that could have been presented earlier." *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000).

The above considerations lead us to the conclusion that the district court did not abuse its discretion in denying appellant's motion to reconsider. To have abused its discretion, the court must have come to a

conclusion that no other reasonable person would reach. Here, we think reasonable people could agree that the evidence appellant presented did not qualify her for relief under Fed. R. Civ. P. 59(e). Thus, we conclude that the court did not abuse its discretion by denying the motion.

### III. CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.